ALFALFA COUNTY NAT. BANK OF CHEROKEE v. CURTIS et al.

No. 30941. April 27, 1943.

*136 P. 2d 937.*

J. Wilford Hill, of Cherokee, for plaintiff in error.

Carpenter & Hadwiger, of Cherokee, for defendants in error.

CORN, C. J. The parties appear in this court in the same order as they appeared in the trial court and will be referred to herein as plaintiff and defendants.

The original action was instituted in the district court of Alfalfa county by the Alfalfa County National Bank of Cherokee, Okla., against W. W. Curtis and R. J. Curtis, his wife, for the purpose of foreclosing a purported lien upon a preference right lease issued by the Commissioners of the Land Office of the State of Oklahoma to W. W. Curtis, which lease was assigned by said lessee to said bank as collateral security for the note of $2,500 executed by W. W.

Curtis and R. J. Curtis to said bank on November 10, 1930, which said note was also secured by chattel mortgage on wheat crop and other personal property. Thereafter payments of interest and upon the principal debt were made from time to time, and short time renewal notes were given, the last of which was dated May 17, 1938, extending the time of payment to June 30, 1939, at which time there was a balance of $1,009.38 due.

Subsequent to the filing of the petition, W. W. Curtis died, and on April 2, 1940, his widow, R. J. Curtis, was appointed executrix of his estate, and the action was revived in the name of the executrix and heirs at law of said deceased.

The action was in rem and sought only the sale of the leasehold rights and the improvements thereon, and the application of the proceeds from the sale to the payment of the debt.

Among other defenses, the defendant alleged that the lease in question expired by its own terms on December 31, 1930, and that it ceased to be of any force and value after its expiration as security for said indebtedness. A jury was ordered empaneled to advise the court upon questions of fact, but after hearing the arguments of counsel upon the question of law as to the effect of the assignment of the expired lease upon subsequent leases and particularly upon the present lease which was issued to R. J. Curtis after the death of W. W. Curtis, the court discharged the jury and proceeded to determine the question of law in favor of the defendants, finding that the lease assigned had become extinct by expiration, and that by reason thereof the lien conveyed by the assignment terminated upon the expiration of the lease, and that there remained no property right against which a lien could be adjudged and enforced. The court further found that the assignment of the lease and lease right did not create a lien upon the improvements. Judgment was also entered for the defendants and

against the plaintiff for the costs of the action and attorney's fee in the sum of $100.

The only question presented here for determination is whether or not the assignment of the preference right lease created a continuing lien against subsequent leases, or whether the lien became extinct upon the expiration of the term of the lease assigned.

The plaintiff, in support of its contention that the assignment created a continuing lien, cites two sections of the statute, as follows:

Title 16, sec. 17, O. S. 1941:

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed as the case may be."

Title 42, sec. 8, O. S. 1941:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

The plaintiff also cites 32 Am. Jur. 990, stating the rule contended for in this case, as follows:

"Although as between landlord and tenant, the tenant has, independent of contract or the custom of the country, no legal or equitable right to a renewal, since it depends upon the mere volition of his landlord, yet, in regard to third persons, he has an interest which a court of equity recognizes as a valuable interest, and which it will protect. * * * Where a leasehold interest is mortgaged, pledged, or charged as security for a debt, a renewal obtained by the lessee, or a new lease obtained by him on a surrender of the old, is held to inure to the benefit of the creditor; . . ."

The footnote of the text cites McCourt v. Singers-Bigger (C.C.A. 8th) 145 F. 103, 7 Ann. Cas. 287; Phyfe v. Wardell, 5 Paige (N.Y.) 268, 28 Am. Dec. 430; Mitchell v. Reed, 61 N.Y. 123, 19 Am. Rep. 252, and other cases.

The rights of the plaintiff, however, do not rest entirely upon the statutory provisions or general principles of law above set forth, but the provisions of the lease and the assignment indicate that it was the intention of the parties that the continuing rights of the lessees in the leasehold and the improvements thereon were given as security for the debt, and that the lien created by the assignment should attach to these rights and improvements upon the premises as long as the same were held by the lessees or until the debt secured thereby should be paid and discharged.

The lease contains the provisions giving the lessees the preference right to re-lease the premises at the expiration of the lease, subject to certain conditions imposed by other provisions of the lease. The right of the lessees to re-lease the land was conditional and not absolute. Magnolia Petroleum Co. v. Price, 86 Okla. 105, 206 P. 1033; Anderson-Prichard Oil Corp. v. McBride, 188 Okla. 384, 109 P. 2d 221. But the fact that said lessees did re-lease the land after the expiration of the lease in force at the time of pledging the leasehold rights, and the fact that Mrs. Curtis, comaker of the notes and cosigner of the assignment of the lease with her husband for security for the debt, is now the lessee under the preference right, sustain and give subsistence to the leasehold rights pledged.

Let us examine the pertinent provisions of the lease and of the assignment. The pertinent provision of the lease is as follows:

"And it is hereby agreed that the party of the second part shall have the preference right to release said land as provided by the laws of said state."

The assignment is upon the printed form prescribed by the Commissioners of the Land Office of the State of Oklahoma, and is as follows:

"Assignment of Lease for Security

"I, W. W. Curtis of Carmen, Oklahoma, lessee of the SW ¼ of Sec. 16, Twp. 25, R. 11, reserved school or public land of the State of Oklahoma, do hereby assign my lease and lease right upon said land to the Alfalfa County National Bank of Cherokee, Oklahoma as security for a loan in the sum of Twenty-five Hundred and No/100 Dollars, made me this 10th day of November, 1930, which sum of Twenty-five Hundred and No/100 Dollars I hereby agree to repay as follows: $2500.00 on November 10, 1931; with interest at the rate of 10 per cent. from date—And it is specifically understood and agreed that if default is made in the payment of said principal or any installment thereof, when the same shall become due as above provided, the whole of said indebtedness evidenced and secured by this instrument shall, at the option of the owner and holder thereof, immediately be and become due and payable.

"In the event said indebtedness, principal and interest, is fully paid and satisfied at maturity, according to the tenor and effect of the foregoing stipulations and provisions, this assignment shall be and become null and void; otherwise to be and remain in full force and effect, and operate as a relinquishment of all my rights, title and interest as the lessee of the above named school or public land of the State of Oklahoma, and in and to the improvements thereon, and said Alfalfa County National Bank is hereby authorized to advertise said lease and improvements for sale for thirty days in some paper of general circulation in Alfalfa County, and sell same to the highest bidder at the place of business of said bank or at the front door of the Court House of the County Seat of said County, the place of sale to be designated in said advertisement; the proceeds of said sale to be applied as follows: First, to the payment of all past due rentals and assessments due the State of Oklahoma; second, payment of the cost of advertising and sale of said land; third, the principal and interest due the assignee under this agreement; all residue of the proceeds to go to the assignor.

"It is further understood, contracted and agreed that if I should fail or refuse to pay any sums due or to become due as rental for the above described land conformably to the provisions of my said lease thereon, the owner and holder of this assignment may pay the same and any interest thereon, and any sum so paid shall, immediately become due and payable by me to him, and this assignment shall extend to, cover and secure any such sum or sums as fully and effectively as if the same were included in and made a part of the principal sum first above set forth.

"This assignment is made subject to the laws of this State and the rules and regulations adopted by the Commissioners of the Land Office.

(Signed)

"W. W. Curtis, Lessee,

"R. J. Curtis, Wife of Lessee."

And the assignment was duly acknowledged before a notary public and filed in the office of the Commissioners of the Land Office.

The preference right of lessee to re-lease such land, the long tenure of the lease, and the right of the lessee to sell or remove his improvements, are features of the preference right lease that render it valuable and desirable as security for loans. And the state has recognized this distinctive value and has provided a special form of assignment designed to fully protect the creditor by prescribing the procedure for the sale of the leasehold rights and the improvements of the lessee in the event of default in the payment of the indebtedness secured thereby, and the application of the proceeds of the sale, after satisfying all claims and charges of the state, to the payment of such indebtedness.

We therefore hold that the renewal of the lease inures to the benefit of the creditor and that the lien created by the assignment is enforceable against the leasehold while it remains in the lessee making such assignment.

The judgment of the trial court is therefore reversed and remanded, with directions to proceed with the cause

in conformity with the views herein expressed.

RILEY, OSBORN, BAYLESS, WELCH, and HURST, JJ., concur. GIBSON, V. C. J., and DAVISON and ARNOLD, JJ., absent.